UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL ANDREW KITCHEN,　　　)
# 189265,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)　　Case No. 1:16-cv-1068
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Honorable Janet T. Neff
　　　　　　　　　　　　　　　　)
CORIZON HEALTH INC., et al.,　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　)
_____)

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C.

§ 1983.　Plaintiff is an inmate at the Carson City Correctional Facility.　(ECF

No. 111).　His complaint arises out of conditions of his confinement at the Michigan

Reformatory from October 29, 2015, through November 23, 2015, and at the Bellamy

Creek Correctional Facility from November 24, 2015, through July 12, 2016.

Plaintiff is dissatisfied with the decisions of medical professionals regarding how

frequently he can obtain refills of an inhaler that has been prescribed and provided

as treatment for his asthma and cardiopulmonary disease (COPD).

Plaintiff filed this lawsuit on August 29, 2016.　The defendants are divided

into two groups.　The first group of defendants is Corizon Health, Incorporated

(Corizon) and its employees Nurse Practitioners Corey Grahn and Andrea Lindhout

-1-

(collectively referred to as the Corizon defendants). The second group of defendants (collectively referred to as the MDOC defendants) is comprised of employees of the Michigan Department of Corrections: Registered Nurse Lindsey Taylor, Registered Nurse R. Harbaugh, Corrections Officer Burch, Registered Nurse Diana Whitelock, Registered Nurse S. Gregurek, Corrections Officer Nixon, Registered Nurse S. Buskirk, Registered Nurse Kevin Corning, Registered Nurse Joshua Langdon, Michigan Reformatory's Health Unit Manager Bryan Deeren, Registered Nurse and Clinical Administrative Assistant of the Southern Region Health Care Administration Laura Kinder, and Manager of the MDOC's Grievance Section of the Office of Legal Affairs Richard Russell.

The matter is before the Court on a series of motions: the MDOC defendants' motion for a stay of discovery (ECF No. 61), the motion by the Corizon defendants to compel discovery (ECF No. 66), plaintiff's motion to strike the MDOC defendants' motion for a stay of discovery (ECF No. 71), plaintiff's motion for a protective order (ECF No. 72), plaintiff's motion to strike defendants' brief (ECF No. 77), plaintiff's motion to quash a subpoena, for sanctions, and request for an extension of time to file a motion (ECF No. 80), plaintiff's motion to compel against the Corizon defendants (ECF No. 90), plaintiff's motion to enforce subpoenas and for an extension of time to file a response to the MDOC defendants' motion for summary judgment (ECF No. 95), and a motion by the Corizon defendants for an extension of their deadline for filing a motion for summary judgment (ECF No. 103).

Upon review, the motion to stay discovery (ECF No. 71), the motion to strike (ECF No. 77), the motion to extend time (ECF No. 80), and the motion to enforce subpoenas and to extend time (ECF No. 95) will be denied. The Corizon defendants' motion to compel (ECF No. 66) will be granted and plaintiff will be ordered to sign the release for the MDOC's records. Other motions (ECF No. 61, 72, 90, 103) will be granted in part and denied in part as specified herein.

1. <u>MDOC Defendants' Motion for Protective Order</u>

The MDOC defendants filed a motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). Under the paragraph 2(c) of the Court's case management order (ECF No. 22, PageID.109), discovery against the MDOC defendants was limited to the issue of exhaustion of administrative remedies. The discovery sought by plaintiff (*see* ECF No. 62-1, PageID.646, PageID.646-48) was not limited to the issue of exhaustion of administrative remedies on the claims at issue in this lawsuit. The MDOC defendants' motion for a protective order (ECF No. 61) will be granted in part and denied in part. The motion will be granted to the extent that the Court will continue to enforce the case management order's limitation of discovery against the MDOC defendants to the issue of exhaustion of administrative remedies and the time period for conducting such discovery has passed.

2. Plaintiff's Motions to Strike

On March 31, 2017, plaintiff filed a motion to strike the MDOC defendants' motion for a protective order (ECF No. 71) and a motion to strike a "[b]rief filed by the MDOC Defendants responding to Plaintiff's motion for a protective order against the Corizon Defendants" (ECF No. 77). Upon review, plaintiff's motions to strike will be denied for multiple reasons. First, the Court has determined that the MDOC defendants are entitled to a protective order.

Second, the challenged motion and brief are not pleadings under Rule 7(a) and plaintiff has not established grounds for striking those documents under Rule 12(f). *See* FED. R. CIV. P. 7(a), 12(f); *see also Lucas v. JBS Plainwell, Inc.*, No. 1:11-cv-302, 2011 WL 5408843, at *1 (W.D. Mich. Nov. 8, 2011).

Third, plaintiff's argument that the documents "should be stricken from the record because their lawyer has not been given leave of court to make an appearance" (ECF No. 78, PageID.749) is frivolous. Defendants' attorney did not require leave of Court to make an appearance. Defendants can be represented by more than one attorney.

Fourth, Local Civil Rule 7.1(d) is an attempt to help the Court deal with the proliferation of non-dispositive civil motion practice – a problem that is well-illustrated by this case. Rule 7.1(d) is designed to force the moving party to ascertain whether the motion will be opposed, confer in a good faith effort to resolve the dispute, and to provide the Court with a separately filed certificate in writing "setting forth in

detail the efforts of the moving party to comply with the obligation created by this rule." W.D. MICH. LCIVR 7.1(d). It is patent that Rule 7.1(d) was not intended to exacerbate the existing problem by creating opportunities for another yet layer of motions based on assertions that a movant's certification was "false" or that efforts to resolve the matter before filing the motion were not made in good faith. (ECF No. 71, PageID.710-12). While a purported deficiency in the movant's certification might warrant some limited discussion in a brief filed in opposition to a motion, it should never spawn a round of motions to strike. Plaintiff's motions to strike will be denied.

3. <u>The Corizon Defendants' Motion to Compel and Plaintiff's Motion for a Protective Order</u>

On March 17, 2017, the Corizon defendants filed a motion to compel. (ECF No. 66). It is beyond question that plaintiff placed his medical records and treatment at issue by filing this lawsuit claiming that he received constitutionally inadequate medical care. The Corizon defendants are seeking a Court order compelling plaintiff to sign an authorization for release of the MDOC's records regarding plaintiff for the period between from February 1, 2011 and the present. (*Id.* at PageID.686).

On March 31, 2017, plaintiff filed a motion captioned as a "MOTION FOR PROTECTIVE AND/OR QUALIFIED PROTECTIVE ORDER." (ECF No. 72). Plaintiff concedes that the Corizon defendants are entitled have access to the MDOC's medical records regarding his condition and medical care. (*Id.* at PageID.731).

Plaintiff seeks to restrict the Corizon defendants' access to only those records related to his asthma and COPD. Plaintiff would like to inspect the medical records before the MDOC provides them to the Corizon defendants. He would like the Court to prohibit the Corizon defendants from having *ex parte* communications with medical care providers. He asks the Court to order someone to "redact" his social security number and birth date from any documents released to the Corizon defendants. Plaintiff also desires that the Court make provisions preventing unauthorized disclosures of the medical records, order that any medical records released be destroyed at the end of the litigation, and order that access to the medical records be restricted to attorneys of record. (*Id.* at PageID.733-38). Upon review, plaintiff's motion for a protective order will granted in part and denied in part. Plaintiff will be ordered to sign the release for the MDOC's medical records, and if he fails to sign the release (ECF No. 66-2, PageID.692) and mail it to the attorney for the Corizon defendants and file proof of service of same with the Court on or before November 24, 2017, a report and recommendation will enter recommending that all plaintiff's claims against the Corizon defendants be dismissed with prejudice.

Prisoners claiming deliberate indifference to serious medical needs place their medical condition and the medical care that they have received directly at issue and thereby waive whatever privileges or statutory protection the medical records may have previously enjoyed under HIPAA. *See Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008) (waiver of federal common law psychotherapist-patient privilege);

*Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 n.2 (6th Cir. 2007) (waiver of state-law privilege); *Fuller v. Kerr*, No. 2:13-cv-13171, 2015 WL 1565367, at *2-3 (E.D. Mich. Apr. 8, 2015) (waiver of federal common law psychotherapist-patient privilege); *Romano v. SLS Residential, Inc.*, 298 F.R.D. 103, 112-15 (S.D.N.Y. 2014) (waiver of HIPAA protections).

In addition, given the public's constitutionally-based right to know the evidence on which this Court bases a decision on a motion for summary judgment, motions to seal summary judgment exhibits, including medical records, are regularly denied by this Court. *See, e.g.*, *McCallum v. Corizon, Inc.*, No. 1:15-cv-700 (W.D. Mich. Sept. 21, 2016) (Order denying Corizon's motion to seal summary judgment exhibit); *Simmons v. Rogers*, No. 1:14-cv-1242 (W.D. Mich. March 21, 2016) (same).

"The Sixth Circuit has pointed out that the presumption of access to court proceedings finds its genesis in the founding principles of this country and a revulsion against secret judicial proceedings, such as those held in the Star Chamber and other prerogative courts." *Martis v. Dish Network*, No. 1:13-cv-1106, 2013 WL 6002208, at *1-2 (W.D. Mich. Nov. 12, 2013) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177-79 (6th Cir. 1983)). The presumption has roots both in the First Amendment and the common law, and it applies to pleadings, motions, and other documents that bear on the merits of a controversy. *Martis*, 2013 WL 6002208, at *1. "The parties are privileged to negotiate in secret, but they must litigate in

public." *Encana Oil & Gas (USA), Inc. v. Zaremba Family Farms, Inc.*, No. 1:12-cv-369, 2012 WL 1377598, at *2 (W.D. Mich. Apr. 19, 2012).

Plaintiff concedes that the Corizon defendants should be permitted access to the MDOC's medical records for the time period that they have requested. (ECF No. 73 at PageID.734). He asks, however, that the Court limit defendants' access to records regarding "(1) the prescription and use of inhalers and medication given to Kitchen to control his asthma and (2) the treatment by physicians and medical providers of Kitchen's asthma or chronic obstructive pulmonary disease from February 1, 2011 to January 1, 2017." (*Id.* at PageID.732). Defendants respond that plaintiff placed his medical condition at issue, and that he is not entitled to restrict defendants' access in the manner suggested. (ECF No. 89 at PageID.815-20).

Plaintiff alleges that he suffered a broad range of injuries and he claims entitlement to extensive damages. Every count that plaintiff lists in his complaint includes allegations that as a result of defendants' actions, plaintiff, "suffered damages including without limitation bodily injury and resulting pain and suffering, disability, mental anguish, and the capacity for the enjoyment of life. The losses described are permanent or continuing in nature and [plaintiff] will suffer such losses in the future." (ECF No. 1 at ¶¶ 113, 118, 123, 128, 133, 137, 141, PageID.18-25). "Plaintiff does not get to choose which discrete portions of his medical records he permits Defendants to discover." *Sleighter v. Kent County Jail Adm'r*, 1:12-cv-703, 2013 WL 5320203, at * 5 (W.D. Mich. Sept. 20, 2013). Defendants are entitled to all

the requested MDOC records regarding plaintiff for the period from February 1, 2011, to the present.

Plaintiff asks that the Court order that he be permitted to inspect the records before the MDOC provides them to the Corizon defendants. (ECF No. 73 at PageID.734-35). Plaintiff has no such right of inspection. Plaintiff invokes the Michigan Medical Records Access Act, MICH. COMP. LAWS § 333.26261, *et seq.*, (ECF No. 73 at PageID.735), but the question of whether he is entitled to access to the MDOC's records under the Michigan statute is simply not an issue in this lawsuit. It is utterly irrelevant to defendants' entitlement to the documents in question.

In addition, this case is brought under the Court's federal-question jurisdiction. "Pursuant to Rule 501 of the Federal Rules of Evidence, the issue of privilege in federal-question cases is governed by federal law, not state law. This is the rule even where, as here, there are pendent state-law claims asserted as well as federal claims." *Carlson v. Fewins*, No. 1:08-cv-991, 2010 WL 11488917, at *2 (W.D. Mich. Apr. 9, 2010) (citing *Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992)). There is no federal physician-patient privilege. *See Hancock v. Dodson*, 958 F.2d at 1373; *see also Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 551 (S.D. Ohio 2014) ("It is well-established that, under federal common law, there is no physician-patient privilege.").

Plaintiff asks that the Court "prohibit the Corizon Defendants from having *ex parte* communications with his medical providers." (ECF No. 73 at PageID.736).

The Court has "broad discretion" in regulating discovery. *Strayhorne v. Caruso*, No. 11-15216, 2014 WL 916814, at *2 (E.D. Mich. Mar. 10, 2014). The Court, in its discretion, declines to impose the suggested restriction. The Corizon defendants are entitled to speak with Corizon's employees and contractors and others medical care providers regarding the care that plaintiff has received or is receiving. "The HIPAA regulations plainly permit adversaries in litigation to have access to a claimant's medical records that are relevant to the issues in the litigation. Having access to the medical witnesses who may testify at trial serves the same goal of allowing equal access to the evidence, which is essential to the success of the adversary process." *Thomas v. 1156729 Ontario Inc.*, 979 F. Supp. 2d 780, 784 (E.D. Mich. 2013); *see also Owusu v. Michigan Dep't of Corr. Pain Mgmt. Comm.*, No. 16-cv-12490, 2017 WL 3913152, at * 1-2 (E.D. Mich. Sept. 7, 2017) (noting that e*x parte* communications with health care providers are contemplated by HIPAA and are regularly allowed by federal courts).

Plaintiff cites 45 C.F.R. § 164.512(e)(v), which states:

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

Although defendant opposes plaintiff's motion because plaintiff is asking the Court to impose a host of additional restrictions, nothing in defendants' brief suggests that a straightforward qualified protective order sufficient to satisfy the above referenced requirements would be opposed. Only this portion of plaintiff's motion will be granted and the Court's order will contain basic provisions sufficient to satisfy 45 C.F.R. § 164.512(e)(v). The Court is granting this relief to avoid potential further delays in getting the medical records into the hands of the Corizon defendants.[1]

In addition, to the above referenced provision regarding destruction of records, plaintiff would like the Court to "require the Corizon defendants to send the released medical records, and all copies made of them, to an attorney selected by [plaintiff] or the Court at the end of the litigation, so that the records can be properly destroyed." (ECF No. 73, PageID.737). HIPPA and its regulations contain no such requirements. There is nothing before the Court suggesting that defendants' attorneys will be unable to properly dispose on any medical records at the conclusion of this lawsuit and all related appeals.

Plaintiff asks the Court to "order the redaction of his social security number and birth date from any medical records released to the Corizon Defendants." (ECF

---

[1] The Court's order will also grant Corizon defendants' motion for an extension of time to file their motion for summary judgment and establish a briefing schedule.

No. 73 at PageID.736). Plaintiff is not entitled to have anything redacted from the documents that the MDOC is going to produce. The attorneys already have an obligation to redact portions of the information regarding plaintiff's birth date and social security number from documents filed with the Court. *See* FED. R. CIV. P. 5.2(a)(1),(2). There is no need for an order.

Plaintiff asks the Court to order that the MDOC's medical records should only be "seen by attorneys Ronald W. Chapman, Sr., Carly Van Toomme, Patrick L. Klida, and Adam P. Sadowski." (ECF No.73 at PageID.737). The Court, in its discretion, declines to impose the suggested restriction because it would improperly intrude on the Corizon defendants' ability to defend against plaintiff's claims.

### 4. Plaintiff's Motion to Quash a Subpoena

On January 6, 2017, the Corizon defendants issued a notice of a subpoena that they would be serving on the Michigan Department of Corrections, including a proof of service on plaintiff. (ECF No. 81-1, PageID.767-68). Under Rule 5(b)(2)(C), the service on plaintiff was complete upon mailing. FED. R. CIV. P. 5(b)(2)(C). The subpoena called for the production of the following documents in Troy, Michigan, on February 6, 2017: "A certified copy of all documents pertaining to Step III grievances filed by Michael Kitchen, # 189265 during his incarceration with the Michigan Department of Corrections from 2/1/2011 through [p]resent[,] including a copy of his grievance history report." (ECF No. 81-1, PageID.770). On January 6, 2017, the Corizon defendants sent the subpoena to the MDOC by certified mail.

(ECF No. 81-1, PageID.769). The MDOC did not object and it produced the grievance records.

On March 31, 2017, more than a month after the scheduled date for production, plaintiff filed a motion in this Court to quash a subpoena, for sanctions, and for an extension of time to file the aforementioned motions. (ECF No. 80). Plaintiff's motion to quash must be denied. Rule 45(d)(3)(A) requires that a motion to quash be "timely" and that it be filed in the district "where compliance is required." Plaintiff's motion failed to satisfy either requirement.

Further, assuming arguendo that plaintiff's motion had been timely and properly filed in this Court, the motion would have been denied. Plaintiff has identified a technical deficiency in the Corizon defendants' service of the third party subpoena under Rule 45(a)(4). Rule 45(a)(4) does require that *before* the subpoena is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.[2] FED. R. CIV. P. 45(a)(4). The mere identification of

---

[2]The Court finds the Corizon defendants' argument based on Rule 45(b)(1)'s use of the term "delivery" (ECF No. 88 at PageID.801-02) is not persuasive. Delivery under Rule 45 has historically been interpreted to require personal service. *Garvins v. Hofbauer*, No. 2:09-cv-48, 2012 WL 1578919, at *2 (W.D. Mich. May 4, 2012). The Sixth Circuit has not endorsed the minority position that other forms of service suffice. Further, persuasive legal authorities warn attorneys that until Rule 45(b) is clarified, "personal delivery is the safest course for counsel to follow." 9A CHARLES ALAN WRIGHT, & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2454 at 401 (3d ed. 2008). However, like other "technical deficiencies" regarding service, the deficiency of service of the subpoena by certified mail is generally overlooked where the party received notice of the subpoena and was not prejudiced by the method of service. *Garvins*, 2012 WL 1578919, at *2.

the technical deficiency, however, is generally not considered sufficient for the drastic step of quashing a subpoena. *See Gorken Am. LLC v. Bandepalya*, No. 2:14-cv-1445, 2014 WL 7392357, at *2 (S.D. Ohio Dec. 29, 2014); *Systems Prod. & Solutions, Inc. v. Scramlin*, No. 13-cv-14947, 2014 WL 3894385, at *6 (E.D. Mich. Aug. 8, 2014).

Plaintiff's other arguments for quashing the subpoena (ECF No. 81 at PageID.762-64) are not persuasive. The failure to file proof of service of a subpoena with the Court under Rule 5.2 of the Local Civil Rules does not constitute grounds for quashing a subpoena. Prisoner grievances are matters of public record, not privileged or confidential. *See e.g.*, *Dunham v. Malik*, No. 4:13-cv-10001, 2014 WL 4414506, at *3 (E.D. Mich. July 18, 2014); *Bradfield v. Corr. Med. Servs.*, No.1:07-cv-1016, 2008 WL 5685586, at *5 (W.D. Mich. July 3, 2008). Grievances do not provide a "back door" to plaintiff's medical records. (ECF. No. 81 at PageID.763). The Corizon defendants were clearly entitled to the MDOC's grievance records in order to make a determination whether plaintiff had exhausted his administrative remedies on the claims asserted before he filed this lawsuit. *See* 42 U.S.C. § 1997e(a). There is no foundation for imposing sanctions or any other relief that plaintiff requests. Plaintiff's motion will be denied.

5. <u>Plaintiff's Motion to Compel against the Corizon Defendants</u>

On April 17, 2017, plaintiff filed a motion to compel discovery against the Corizon defendants. (ECF No. 90). The Corizon defendants oppose the motion. (ECF No. 99). Upon review, plaintiff's motion to compel will be granted in part and

denied in part.   The motion will be granted only as to a reformulated interrogatory against Corizon.   Plaintiff's motion will be denied in all other respects.

A.   Requests for Production of Documents

Plaintiff asks the Court to overrule defendants' objections and order the defendants to produce documents responsive to two requests for production of documents.   The initial request and response provided defendants response are set forth below:

> 1.      Please produce for inspection and, if necessary, copying any and all documents which depict the number of times within the last seven (7) years that medical expenses of costs of Michigan Prisoners, including Plaintiff Kitchen and any and all other prisoners who have or have had asthma, chronic obstructive pulmonary disease (COPD), and/or any other respiratory disease, have reached the "risk-share target" and the "risk-share maximum cap", as defined in the contract that the Michigan Department of Corrections (MDOC) and/or the State of Michigan has signed with Defendant Corizon, or any other corporate and/or business name that Defendant Corizon was formerly known by, and/or any contract that the MDOC and/or Michigan has signed with Valitas Health Services, Valitas Incorporate, Valitas Equity, LLC, or any of its subsidiaries or "branch" corporations, companies, or businesses to provide medical care services to Michigan's prisoner population.

> ANSWER: Defendants object to this request as vague, ambiguous, overbroad, unduly burdensome, unrelated to the claims and defenses in this case, and not proportional to the needs of this case.   *See* FED. R. CIV. P. 26(b).   Defendants further object to the extent Plaintiff seeks documents in the custody, possession, and control of the Michigan Department of Corrections ("MDOC"), such as health records.   Defendants are not the custodians of such records.   Defendants do not have the obligation to produce documents that are not in their possession, custody, or control.   *See* FED. R. CIV. P. 34.   Defendant objects to this request on the basis that the requested documents in its custody are privileged, confidential, and/or not discoverable on the basis that they are peer/professional/quality review materials and or patient safety work product protected from disclosure in litigation by federal and/or state law.   *See* MCL

§ 331.533; MCL § 333.20175(8); MCL § 333.21515; 42 USCS § 299b-21, *et. seq.*; 42 C.F.R. § 3.20, *et. seq.*, and in particular 42 C.F.R. § 3.204.

(ECF No. 91-3, PageID.837-38).

Plaintiff's brief does not attempt to engage defendants' objections. He argues that the documents are relevant because he has alleged in his complaint that "he is being deprived of medical care because the Corizon Defendants' position is that medical costs are expensive[.]" (ECF No. 91 at PageID.826). Plaintiff cites no legal authority in support of his argument. (*Id.*). Defendants' objections to this request because it is overbroad, unduly burdensome, not proportional to the needs of this case are sustained. It is not necessary to address any other objections.

The other request and response at issue are set forth below:

2.      Please produce for inspection and, if necessary, copying any and all documents, memorandums, electronic messages, or any and all other communications, whether electronic or otherwise, that were distributed to medical providers and/or any other persons responsible for providing medical care services to any prisoner population on behalf of Defendant Corizon, and/or any officer, agent, supervisor, or employee of Defendant Corizon, and/or other corporation, company, and/or subsidiary that Defendant Corizon was formerly known by, that governs, instructs, or in any other way discusses the distribution and/or prescription to Plaintiff Kitchen and to any other prisoner of Q-Var inhalers and/or Ventolin, Alubertol, or Proair HFA inhalers, or any other type of inhaler referred to as a "rescue inhaler", including, but not limited too, any such document, memorandum, electronic message, and/or other any other type of communication, whether electronic or otherwise, which discussed the costs of such inhalers and/or the manner in which prescriptions and/or distributions for such inhalers to prisoners were discussed.

ANSWER: Defendants object to this request as vague, ambiguous, overbroad, unduly burdensome, unrelated to the claims and defenses in this case, and not proportional to the needs of this case because it imposes an unlimited   burden to identify every individual, regardless of location, level of involvement, or relationship with Defendants, who has "any and   all ... communications"

regarding "Q-Var inhalers and/or Ventolin, Alubertol, or Proair HFA inhalers, or any other type of inhaler referred to as a "rescue inhaler..." Defendants cannot reasonably comply with this request. *See* FED. R CIV. P. 26(b). Defendants further object to the extent Plaintiff seeks documents in the custody, possession, and control of the Michigan Department of Corrections ("MDOC"), such as health records. Defendants are not the custodians of such records. Defendants do not have the obligation to produce documents that are not in their possession, custody, or control. *See* FED. R. CIV. P. 34. Defendants further object to this interrogatory on the ground that it seeks information within the control of other non-parties whose documents, communications, and deliberations are not within Plaintiff's [sic] possession, custody, or control. Defendant objects to this request on the basis that the requested documents in its custody are privileged, confidential, and/or not discoverable on the basis that they are peer/professional/quality review materials and or patient safety work product protected from disclosure in litigation by federal and/or state law. *See* MCL § 331.533; MCL § 333.20175(8); MCL § 333.21515; 42 USCS § 299b-21, et. seq.; 42 C.F.R. § 3.20, *et. seq.*, and in particular 42 C.F.R § 3.204. Notwithstanding and without waiving these objections see attached documents.

(ECF No. 91-3, PageID.838-39).

Plaintiff again argues that the documents are relevant; but he cites no supporting legal authority and he ignores defendants' objections. (ECF No. 91 at PageID.826). Plaintiff's request is devoid of temporal and geographic limitations attempting to tie his requests to the claims at issue in this lawsuit, which include the adequacy of the medical care relating to the receipt of inhalers. Defendants' objections to this request as overbroad, unduly burdensome, not proportional to the needs of this case are sustained. It is not necessary to address defendants' other objections.

B. Interrogatories

Plaintiff is dissatisfied with Corizon's response to four of his interrogatories.

The first interrogatory and response at issue are set forth below:

> 1. What is the cost of each Q-Var, Ventolin, Albuterol, and/or Proair HFA inhaler that have been prescribed and distributed to Plaintiff Kitchen, and to all other prisoners within the MDOC, since Defendant Corizon was and/or the name of the subsidiary or company that Defendant Corizon was formerly known by, has been in a contract with the MDOC and/or Michigan to provide prisoners with medical care services?
>
> ANSWER: Defendants object[] to this interrogatory as unduly burdensome, ambiguous, overly broad, and vague as to what Plaintiff means by or how he defines the term "cost." Defendants further object to this request on the basis that (1) it is not reasonably calculated to lead to the discovery of admissible evidence; (2) is unlimited in time; (3) it is intended to harass, annoy, and embarrass Defendants; and (4) the information sought is not proportional to the needs of the case. Defendants cannot answer this interrogatory as written.

(ECF No. 91-3 at PageID.840).

Plaintiff argues that the cost of each inhaler goes to his claim that he is being deprived of them because of their cost and he is seeking information about the number of prisoners receiving inhalers to determine the amount of money actually expended to pay for those inhalers. (ECF No. 91, PageID.827). Plaintiff's complaint concerns the adequacy of medical care that he received, not the adequacy of anyone else's medical care. His request lacks temporal limitations tied to his claims. Corizon's objections to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of this case are sustained.

The next interrogatory and response at issue concern a medical provider formerly employed by Corizon who allegedly treated plaintiff during the period at issue:

> 2.     What was the reason that Physician Assistant George Johnson was terminated or resigned?   Mr. George Johnson was formerly employed by Defendant Corizon and assigned to work at the Bellamy Creek Correctional Facility prior to his termination or resignation?
>
> ANSWER:   Defendants object[] to this interrogatory on the basis that (1) it is not reasonably calculated to lead to the discovery of admissible evidence; (2) it is intended to harass, annoy, and embarrass Defendants; (3) it is not relevant to any party's claim or defense; (4) the information sought is personal and confidential.

(ECF No. 91-3 at PageID.840-41).

Plaintiff simply states that "Johnson treated [his] condition while at IBC." (ECF No. 91 at PageID.827).   Corizon simply states:   "Plaintiff has not demonstrated how the reason why a non-defendant former Corizon provider left the company would lead to the discovery of admissible evidence, because he implicitly concedes such information would be personal and confidential."   (ECF No. 99 at PageID.900).   Neither argument serves to adequately frame the issue.   Corizon will be directed to answer the following revised interrogatory, consisting of two parts: Was Physician's Assistant George Johnson assigned to work at the Bellamy Creek Correctional Facility during the period at issue from November 24, 2015, through July 12, 2016?   If yes, was the reason that that he was terminated or resigned based on the medical care that he provided to plaintiff or the frequency with which plaintiff could obtain refills for his inhalers?

The next interrogatory and response at issue concern confidentiality agreements:

> 3.    Does Defendant Corizon, or any of its officers, agents, supervisors, and/or other employees, require its employees to sign a confidentiality agreements?   If so, please provide a copy of that agreement.
>
> ANSWER:   Defendants object[] to this interrogatory on the basis that (1) it is not reasonably calculated to lead to the discovery of admissible evidence; (2) it is intended to harass, annoy, and embarrass Defendants; (3) it is not relevant to any party's claim or defense; and (4) confidentiality is vague and ambiguous.

(ECF No. 91-3 at PageID.841).

Plaintiff states that he asked about confidentiality agreements because he wants to know whether Corizon employees can divulge the information that he is seeking.   (ECF No. 91 at PageID.827).   Corizon's objection that this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence is sustained.

Plaintiff's remaining interrogatory directed to Corizon was remarkable in its breadth:

> 4.    Please provide the names and numbers of any and all prisoners confined, and those that were previously confined, within the Michigan Department of Corrections (MDOC) that have or have had asthma, chronic obstructive pulmonary disease, or any other respiratory disease, and of whom were prescribed and/or given a Q-Var inhaler and/or a Ventolin, Albuterol, Proair HFA, and/or any other type of inhaler referred to as a "rescue inhaler" within the medical community.
>
> ANSWER:   Defendants object to this request as vague, ambiguous, overbroad, unduly burdensome, unrelated to the claims and defenses in this case, in violation of HIPAA, and not proportional to the needs of this case because it imposes an unlimited burden to identify every individual, regardless of location, level  of  involvement, or relationship with Defendants, who have

"ever been confined" within the MDOC "that have or have had asthma, chronic obstructive pulmonary disease, or any other respiratory disease, and of whom were prescribed and/or given a Defendants cannot reasonably comply with this request. *See* FED. R. CIV. P. 26(b). Defendants further object to the extent Plaintiff seeks documents in the custody, possession, and control of the Michigan Department of Corrections ("MDOC"), such as health records. Defendants are not the custodians of such records. Defendants do not have the obligation to produce documents that are not in their possession, custody, or control. *See* FED. R. CIV. P. 34.

(ECF No. 91-3 at PageID.841-42).

Corizon's objections to this request as overbroad, unduly burdensome, and not proportional to the needs of this case are sustained. It is not necessary to address defendants' other objections.

Plaintiff argues that defendant Grahn's objections to two of his interrogatories should be overruled. (ECF No. 91 at PageID.827-28). The first interrogatory and the corresponding objection are set forth below:

1. What type of breathing or respiratory difficulties does peak flows with an average of 230 or below indicate?

ANSWER: Defendant objects to this Request as vague and ambiguous as to what Plaintiff means by "type of breathing or respiratory difficulties." Defendant further objects to this interrogatory on the basis that the Defendant is unable to speculate as to the type of individual Plaintiff is inquiring about. Defendant has no independent recollection or specific knowledge of Plaintiff's peak flow results other than what may be found in his medical records. Moreover, Defendant further objects to this interrogatory on the basis that interpreting peak flow results is dependent on a person's sex, age, and height. Responding to this interrogatory would require defendant to speculate Plaintiff's height and age. Defendant cannot answer the interrogatory as written.

(ECF No. 91-3 at PageID.842). The objections are sustained. Plaintiff's argument that he was not asking "about peak flows relating to any individual person" (ECF

-21-

No. 91 at PageID.827) simply reinforces the appropriateness of the objections. Interpreting peak flow results depends on the test subject's sex, age, and height. Plaintiff elected to block defendant Grahn's access to the relevant MDOC medical records, and thus made it impossible to Grahn to overlook the vague and ambiguous portions of this interrogatory and attempt to formulate a response describing what a specific peak flow test results involving plaintiff, within the range described, might indicate.[3]

The second interrogatory and Grahn's objection were as follows:

2. Who told you to limit refills or renewals of the rescue inhalers" (i.e., Albuterol and/or Proair HFA Inhalers) for Plaintiff Kitchen to once every three months?

ANSWER: Defendant objects to this interrogatory as vague, ambiguous, unlimited in time and argumentative. Subject to and without waiving the foregoing objections, Defendant has no independent recollection or specific knowledge of limiting refills or renewals of Plaintiff's "rescue inhalers" other than what may be found in his medical records. Moreover, Defendant further objects to this interrogatory on the basis that discovery is ongoing and it is not fully known to Defendant at this time exactly what medical treatment was provided to Plaintiff. Defendant does not yet have a copy of Plaintiff's medical records.

(ECF No. 91-3 at PageID.842-43). The objections are sustained and the answer provided was appropriate.

_____

[3] Peak flow is "a measurement of the volume of air a patient can exhale in one forceful breath." *Smith v. Honda of Am. Mfg., Inc.*, 101 F. App'x 20, 22 (6th Cir. 2004). A test subject's effort level may invalidate or skew the results of pulmonary function tests. *See e.g.*, *Harraway v. Commissioner*, 3:16-cv-110, 2017 WL 3327032, at *4 (S.D. Ohio Aug. 4, 2017); *Grover v. Commissioner*, No. 1:11-cv-1208, 2013 WL 3049086, at *4-9 (W.D. Mich. June 17, 2013).

Plaintiff argues that "access to [his] medical file [was] not needed, because if [Grahn] was given a general order to limit refills of asthma related inhalers to all asthmatic prisoners then he can respond to this interrogatory." (ECF No. 91 at PageID.828). Plaintiff's argument is unpersuasive and does not correspond to his interrogatory. Plaintiff asked defendant Grahn to identify who told him to limit refills or renewals of plaintiff's "rescue inhalers" to once every three months. Grahn had no independent recollection and plaintiff had blocked his access to the relevant medical records.

Plaintiff argues that defendant Lindhout could have provided a response to his third interrogatory and that Lindhout's objections should be overruled. (ECF No. 91 at PageID.828). The Court disagrees. Plaintiff asked the following interrogatory:

> If Plaintiff Kitchen's prescription for use of his Albuterol and/or Proair HFA was two puffs every four to six hours as needed, and Kitchen used it as prescribed, then how many puffs per day would Plaintiff Kitchen use out of his rescue inhalers?

(ECF No. 91-3 at PageID.844). The objections made to this interrogatory were as follows:

> Defendant object to this Request as vague and ambiguous as to what Plaintiff means by "use out of his rescue inhalers." Defendant further objects to this interrogatory on the basis that Defendant is unable to speculate as to how frequently plaintiff used a medication that was prescribed for him "as needed." Moreover, Defendant further objects to this interrogatory on the basis that discovery is ongoing and it is not fully known to Defendant at this time exactly what Plaintiff's prescription was or his history of use. Defendant does not yet have a copy of Plaintiff's medical records.

(*Id.*).

Lindhout notes that, with a prescription for use "as needed," it is impossible to determine the length of time over which plaintiff may use the prescription before it is empty. Further, plaintiff's refusal to sign the release for the medical records deprived defendant Lindhout of the specific information necessary to put the interrogatory in context and attempt to answer it. The objections are sustained.

6. <u>Plaintiff's Motion to Enforce Subpoenas</u>

On March 10, 2017, plaintiff mailed two subpoenas demanding that third parties produce documents on April 10, 2017, at the Saginaw Correctional Facility.[4] (ECF No. 92-6 at PageID.862, 867). On April 24, 2017, plaintiff filed a motion to enforce subpoenas and for an extension of time to file a response to the MDOC defendants' March 6, 2017, motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 95). Plaintiff's motion to enforce his subpoenas must be denied because this is not the district where performance was required. *See* FED. R. CIV. P. 45(d)(3)(A); *see also Card v. Principal Life Ins. Co.*, No. 5:15-139, 2017 WL 2260695, at *2 (E.D. Ky. May 23, 2017).

Even assuming that plaintiff's motion was appropriately before this Court, the subpoenas would not be enforced. Rather than taking "reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena" as required

---

[4]On March 30, 2017, plaintiff sent a letter to the individual to whom the subpoena was directed and plaintiff conceded that "the manner in which the subpoena was served was defective." (ECF No. 100-1, PageID.911).

by Rule 45(d)(1),[5] plaintiff did exactly the opposite. He did not narrow his subpoenas to seek documents pertaining to exhaustion of administrative remedies on the claims at issue in this lawsuit. Instead, he sought documents "pertaining to any and all prisoners." (ECF No. 96-2 at PageID.863). If plaintiff's motion had been properly framed for a decision by this Court, the Court would be imposing sanctions against plaintiff pursuant to Rule 45(d)(1).

7. Plaintiff's Rule 56(d) Motion

Plaintiff's motion to enforce subpoenas discussed above concluded with a request for "EXTENSION OF TIME TO FILE RESPONSE TO MDOC'S DISPOSITIVE MOTION." (ECF No. 95 at PageID.852). Under the Court's case management order, plaintiff's response to the MDOC defendants' motion for summary judgment was due on or before May 18, 2017. Plaintiff has not shown good cause under Rule 6(b)(1)(A) of the Federal Rules of Civil Procedure for an extension of the briefing deadline.

Plaintiff's motion states that he should be granted an extension "based on the reasons stated in the attached brief." (ECF No. 95). All parties are strongly discouraged from this reckless practice and they accept all the attendant risks. Not only does the practice fail to comply with Rule 7(b)(1)(B) of the Federal Rules of Civil

---

[5]It is also noted that courts have recognized that the touchstone proportionality requirement of Rule 26(b)(1) applies in this context. *See In re ClassicStare Mare Lease Litig.*, Nos. 5:07-cv-353, 5:06-cv-243, 2017 WL 27455, at *2 (E.D. Ky. Jan. 3, 2017).

Procedure[6] and Rule 7.1(a) of the Local Civil Rules, the moving party risks having a request for relief overlooked because he has buried it somewhere in a brief rather than stating it in his motion. Although plaintiff's brief does not contain any reference to Rule 56(d), he does ask for "additional time to complete discovery before responding to the MDOC defendants' motion for summary judgment" (ECF No. 96 at PageID.856) and he has filed an "affidavit"[7] (ECF No. 96-2 at PageID.871-73). Thus, the *pro se* plaintiff's motion is indulgently construed as a motion made under Rule 56(d).

The Sixth Circuit's recent decision in *Scadden v. Werner*, 677 F. App'x 996 (6th Cir. 2017) is instructive. The Court of Appeals noted that "Federal Rule of Civil Procedure 56(d) spells out how a non-movant should inform the court. The rule requires a nonmovant to show by affidavit or declaration that, 'for specified reasons, [he] cannot present facts essential to justify its opposition.' Then, 'the court *may*: (1) defer considering the motion or deny it; (2) allow time ... to take discovery; or (3) issue any other appropriate order.' " 677 F. App'x at 999 (quoting FED. R. CIV. P. 56(d)) (emphasis added). The Sixth Circuit reiterated that the "need to comply with

---

[6] A motion is, by definition, a request for a court order that must: "(A) be in writing unless made during a hearing or at trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." FED. R. CIV. P. 7(b)(1).

[7] Plaintiff's affidavit is clearly deficient. Rather than making unambiguous statements under penalty of perjury, plaintiff has interjected limitations that his statements are true and correct "to the best of [his] knowledge, information and belief." (ECF No. 96-2 at PageID.873).

Rule 56(d) 'cannot be overemphasized.'" 677 F. App'x at 999 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). It noted that, without a Rule 56(d) affidavit or declaration or a motion that gives the district court a chance to rule on the need for additional discovery, an appellate court would not normally address whether there was adequate time for discovery. 677 F. App'x at 999-1000; *see also Unan v. Lyon*, 853 F.3d 279, 292 (6th Cir. 2017) ("We have observed that filing an affidavit that complies with Rule 56(d) is essential, and that in the absence of such a motion or affidavit, this court will not normally address whether there was adequate time for discovery.") (citation and quotation omitted).

In addition, "even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the rule only provides that a court 'may' extend the discovery deadline. Thus, [the Court of Appeals] reviews the decision 'under an abuse of discretion standard' and only reverse[s] if the decision denying further discovery was 'arbitrary, unjustifiable, or clearly unreasonable.'" 677 F. App'x at 1000 (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623-24 (6th Cir. 2014)). "In so reviewing, [the Sixth Circuit] look[s] to various factors but consider primarily whether the party seeking an extension was diligent in pursuing discovery." 677 F. App'x at 1000 (citations and quotations omitted); *see also Katz v. Village of Beverly Hills*, 677 F. App'x 232, 239 (6th Cir. 2017). A non-moving party's "failure to comply with 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion, or denying

his request for reconsideration, without allowing for more discovery." 677 F. App'x at 1000.

Plaintiff's argument that a decision on the MDOC defendants' motion for summary judgment should be delayed because he requires responses to his subpoenas (ECF No. 96 at PageID.856-57) is not persuasive. One subpoena (ECF No. 96-2 at PageID.867) was unrelated to the issue of exhaustion of administrative remedies. The other subpoena, as previously indicated, failed to focus on the question of exhaustion of administrative remedies on the claims that plaintiff is asserting in this lawsuit. Many of plaintiff's claims are based on events that occurred at RMI rather than IBC. Relatively few of the factual allegations in plaintiff's complaint (ECF No. 1) relate to the period at IBC that plaintiff claims he was on modified access to the grievance process (ECF No. 96-2 at PageID.875). Nothing prevented plaintiff from responding to the MDOC defendants' motion for summary judgment with an affidavit or an unsworn declaration under penalty of perjury setting forth in detail what he did to satisfy his obligations to exhaust the grievance process before filing this lawsuit.

Plaintiff was dilatory rather than diligent in pursuing discovery related to exhaustion of administrative remedies. Initial disclosure requirements do not apply to lawsuits brought by prisoners. *See* FED R. CIV. P. 26(a)(1)(B)(iv), (d)(1). The case management order entered on December 30, 2016, reinforced that the period for conducting discovery was limited. Plaintiff is an experienced prisoner litigant. The

MDOC defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) was certainly not a surprise. Plaintiff had already briefed the issue in 2016 in Case No. 1:16-cv-190. Plaintiff's request that the Court delay a decision on the MDOC defendants' motion for summary judgment based on the affirmative defense provided 42 U.S.C. § 1997e(a) will be denied.

8. <u>Corizon Defendants' Motion for Extension of Their Deadline for Filing a Summary Judgment Motion</u>

On May 19, 2017, the Corizon defendants filed a motion under Rule 16(b)(4) seeking an extension of their deadline for filing a motion for summary judgment. (ECF No. 103). Plaintiff filed nothing in response to the motion. Upon review, the defendants' motion will be granted. The Court finds, however, that given the procedural posture of this case, the proposed order (ECF No. 103-2) is inadequate and it will be rejected. The order accompanying this opinion will amend the Corizon defendants' deadline for filing a motion for summary judgment and establish a briefing schedule.

## **Conclusion**

For the reasons set forth herein, the motion to stay discovery (ECF No. 71), the motion to strike (ECF No. 77), the motion to extend time (ECF No. 80), and the motion to enforce subpoenas and to extend time (ECF No. 95) will be denied.   The Corizon defendants' motion to compel (ECF No. 66) will be granted and plaintiff will be ordered to sign the release for the MDOC's records.   The other motions (ECF No. 61, 72, 90, 103) will be granted in part and denied in part as specified herein.

Date:   November 5, 2017                          /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge