UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL ANDREW KITCHEN,                )
# 189265,                               )
                                        )
                    Plaintiff,          )       Case No. 1:16-cv-1068
                                        )
v.                                      )       Honorable Janet T. Neff
                                        )
CORIZON HEALTH, INC., et al.,           )
                                        )
                    Defendants.         )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a *pro se* plaintiff under 42 U.S.C. § 1983. Plaintiff is an inmate at the Carson City Correctional Facility.   (ECF No. 111).   This is one is a series of lawsuits that plaintiff has filed regarding his medical care. Plaintiff's complaint arises out of conditions of his confinement at the Michigan Reformatory (RMI) from October 29, 2015, through November 23, 2015, and at the Bellamy Creek Correctional Facility (IBC) from November 24, 2015, through July 12, 2016.

Plaintiff filed this lawsuit on August 29, 2016.   He is not satisfied with the decisions of medical professionals regarding how frequently he can obtain refills of an inhaler that has been prescribed and provided as treatment for his asthma and cardiopulmonary disease (COPD).   The defendants are divided into two groups. The first Corizon Health, Inc. (Corizon) and its employees Nurse Practitioners Corey

Grahn and Andrea Lindhout (collectively referred to as the Corizon defendants). The second is comprised of employees of the Michigan Department of Corrections: Registered Nurse Lindsey Taylor, Registered Nurse R. Harbaugh, Corrections Officer Burch, Registered Nurse Diana Whitelock, Registered Nurse S. Gregurek, Corrections Officer Nixon, Registered Nurse S. Buskirk, Registered Nurse Kevin Corning, Registered Nurse Joshua Langdon, RMI's Health Unit Manager Bryan Deeren, Registered Nurse and Clinical Administrative Assistant of the Southern Region Health Care Administration Laura Kinder, and Manager of the MDOC's Grievance Section of the Office of Legal Affairs Richard Russell (collectively referred to as the MDOC defendants).

Plaintiff's complaint is divided into eight counts. Counts I is a labeled as a claim against Corizon Health Inc. for a violation of plaintiff's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause through its policies, customs and practices intended to lessen plaintiff's access to a "rescue inhaler," Q-Var inhaler, albuterol breathing treatments, "and/or any other medications designed to treat[plaintiff's] asthma or COPD." (ECF No. 1 at ¶¶ 103-13, PageID.16-19).

In Count II, plaintiff alleges that defendants Grahn, Langdon, Deeren, Kinder, Harbaugh violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by "assisting in the decision" to decrease refills of plaintiff's "rescue inhaler" from every thirty days to once every three months, and to decrease refills of a Q-Var inhaler from once every thirty days to once every sixty days. (*Id.*

at ¶¶ 114-18).   Count II, also includes a reference to "Art. I, § 16 of the Michigan Constitution."   (*Id.* at ¶ 117, Page ID.19-20).

In Count III, plaintiff alleges that defendants Corning, Lindhout, Whitelock, Gregurek, Buskirk, Harbaugh, Russell, and Kinder violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by "taking part in" the decrease of refills of plaintiff's "rescue inhaler" from every thirty days to once every three months, the decrease refills of a Q-Var inhaler from once every thirty days to once every sixty days, and the cancelation and deprivation of albuterol breathing treatments.   (*Id.* at ¶¶ 119-23, PageID.20-21).   Count III likewise includes a reference to "Art. I, § 16 of the Michigan Constitution."   (*Id.* at ¶ 122, Page ID.21).

Count IV is plaintiff's claim that defendants Taylor, Nixon, Burch, and Corning violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by delaying or denying access to adequate medical care of on July 9, 2016, when a severe storm knocked out IBC's power for about ten hours.   (*Id.* at ¶¶ 124-28, PageID.22-23).   Count IV, also includes a reference to "Art. I, § 16 of the Michigan Constitution."   (*Id.* at ¶ 127, PageID.22).

All the remaining claims purportedly arise under Michigan law.   Count V is labeled "Vicarious Liability of Corizon."   Plaintiff indicates that he is seeking to hold Corizon vicariously liable for the acts of others under "Michigan's common law."   (*Id.* at ¶¶ 129-33, PageID.23-24).   Count VI is a "negligence" claim against all defendants.   Plaintiff seeks to hold all defendants liable for failing to permit him access to the rescue and Q-Var inhalers and albuterol breathing treatments.   (*Id.* at

¶¶ 134-37, PageID.24-25).   Count VII is another tort claim.   Plaintiff seeks to hold all defendants liable for intentional infliction of emotional distress.   (*Id.* at ¶¶ 138-41, PageID.25-26).   Plaintiff sues defendants in their individual and official capacities and seeks an award of damages.   (*Id.* at PageID.3-4, 16-25).

The matter is before the Court Corizon defendants' motion to dismiss (ECF No. 106) and MDOC defendants' motion for summary judgment (ECF No. 59).   Plaintiff responded to Corizon defendants' motion (ECF No. 108), but did not file a response to MDOC defendants' motion for summary judgment.   For the reasons set forth herein, I recommend that Corizon defendants' Rule 12(b)(6) motion (ECF No. 106) be **GRANTED in part** and **DENIED in part**.   I recommend that the motion be denied only as to plaintiff's claim for damages under 42 U.S.C. § 1983 that defendant Corizon, through its policy, practice, or custom was deliberately indifferent to plaintiff's serious medical needs in violation of his Eighth Amendment rights.   I recommend that Corizon defendants' motion be granted in all other respects.

I recommend that all plaintiff's claims for damages against MDOC defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.   I recommend that all plaintiff's purported claims under Michigan law for damages against the MDOC defendants in their individual capacities be dismissed with prejudice pursuant to the statutory authority provided 28 U.S.C. §§ 1915(e)(2) and 1915A.   I recommend that plaintiff's purported federal claims against MDOC defendants Langdon, Deeren, Kinder, Gregurek, Buskirk, Harbaugh, and Russell be dismissed with prejudice pursuant to the statutory

-4-

authority provided by 28 U.S.C. §§ 1915(e)(2) and 1915A.   I recommend that MDOC defendants' motion for summary judgment (ECF No. 59) be granted and that all plaintiff's claims for damages against MDOC defendants in their individual capacities be dismissed without prejudice (this being only an alternative form of relief on those claims against individuals where I have recommended dismissal with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A).

If this report and recommendation is adopted in its entirety, the only remaining claims will be those for damages against Nurse Practitioners Grahn and Lindhout under 42 U.S.C. § 1983 for alleged violation of plaintiff's Eighth Amendment rights stemming from the medications that they prescribed during the period at issue for plaintiff's asthma and COPD and plaintiff's claim for damages against Corizon under 42 U.S.C. § 1983 for alleged violation of his Eight Amendment rights stemming from the corporate defendant's policy, practice, or custom regarding the medications prescribed for plaintiff's asthma and COPD during the period at issue.

## I   Corizon Defendants' Motion to Dismiss

The Corizon defendants have filed a Rule 12(b)(6) motion seeking dismissal of all plaintiff's claims against Corizon and plaintiff's purported state law claims against defendants Grahn and Lindhout.

### A.   Rule 12(b)(6) Standards

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   Under

Rule 8(a)(2), a complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)).   While this notice pleading standard does not require "detailed" factual allegations, it does require more than labels and the bare assertion of legal conclusions.   *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.   *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).   "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).   Courts are not required to conjure up unpled allegations, nor accept unwarranted factual inferences.   *See Total Benefits Planning*, 552 F.3d at 434.   "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)

(quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   Even the lenient treatment generally given *pro se* pleadings has its limits, however.   *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).   "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678).   "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

B.   <u>Plaintiff's Allegations</u>

Plaintiff is an inmate held in the custody of the MDOC.[1]  (¶ 4, PageID.3).   He began his current incarceration in the late 1980s.   (¶¶ 17-20, 31, PageID.6-8).   This lawsuit is based on events that allegedly occurred on and after October 29, 2015. Plaintiff was an inmate at the Michigan Reformatory (RMI) from October 29, 2015, through November 23, 2015.   He was an inmate at the Bellamy Creek Correctional Facility (IBC) from November 24, 2015, through July 12, 2016.   (¶¶ 4, 33, 48, PageID.3, 8, 10).

---

[1] All the citations in this section are to plaintiff's complaint (ECF No. 1).

Plaintiff alleges that Nurse Practitioner Grahn and Nurse Practitioner Lindhout are employed by Corizon Health, Incorporated (Corizon), and that Corizon provides healthcare to Michigan prisoners through its employees. (¶¶ 5, 8, 9, PageID.3-4). Plaintiff was forty-six years old on August 29, 2016, when he filed this lawsuit. Plaintiff states that he has had asthma since he was a child. (¶¶ 10-18, PageID.4-6).

On October 29, 2015, plaintiff was an inmate at RMI. On that date, Nurse Practitioner Grahn gave plaintiff his annual physical. At the conclusion of this examination, Grahn advised plaintiff that he would be limiting plaintiff's access to refills of his Ventolin inhaler to once every three months and refills of his Q-Var inhaler to once every sixty days. (¶¶ 33-34, PageID.8). Earlier, plaintiff had been able to obtain more frequent refills of these prescribed medications. (¶¶ 19-39, PageID.6-8). Plaintiff describes Q-Var as "an inhalation aerosol corticosteroid." (¶ 20, PageID.6).

Plaintiff states that he needs refills of his Ventolin inhaler, which he refers to as his "rescue inhaler, "once every 30 days." He also attaches the "rescue inhaler" label to Albuterol or Proair-HVA aerosol inhalers. (¶¶ 14, 21, 22, 39, PageID.5-6, 8). Plaintiff also believes that Nurse Practitioner Grahn should have increased the Q-Var dosage or prescribed some unspecified medication "more effective than the Q-Var inhaler." (¶ 43, PageID.9).

On November 24, 2015, plaintiff was transferred to IBC.   Plaintiff states that in early 2016, he received medical treatment provided by Dr. George Johnson. Plaintiff claims that Dr. Johnson told him that he appeared to have stage 1 chronic obstructive pulmonary disease (COPD) and made adjustments to the inhaler prescriptions.   Plaintiff alleges that, in early March 2016, Dr. Johnson was either forced to retire or terminated as a Corizon or MDOC employee.   (¶¶ 51-63, PageID.10-11).

In early March 2016, Nurse Practitioner Lindhout began treating plaintiff. Nurse Practitioner Lindhout discontinued treatment and prescriptions that had been approved by Dr. Johnson.   On April 19, 2016, Lindhout canceled plaintiff's prescription for a Q-Var inhaler and restricted plaintiff to refills of rescue inhaler to once every six months.   (¶¶ 63-71, PageID.11-12).   On May 10, 2016, defendant Whitelock declined to provide plaintiff with the Q-Var inhaler that he requested because it was not a medication that had been prescribed by Nurse Practitioner Lindhout.   (¶ 68, PageID.12).   On July 12, 2016, Whitelock declined a similar request for a "rescue inhaler" refill that plaintiff made on July 10, 2012.   (¶¶101-02, PageID.16).

Plaintiff makes a vague allusion suggesting that there will be some evidence in his medical record indicating that he was abusing his "rescue inhaler."[2]   (¶ 37, PageID.8).   Plaintiff alleges that from April 2016, through July 2016, his episodes of

---

[2] *Gavin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("[T]he substance in inhalers can be used to induce a high if the device is misused.").

breathing difficulties, including wheezing and shortness of breath were "kept somewhat under control when [plaintiff] finally received a refill of his rescue inhaler on or about April 13, 2016." Plaintiff concedes that he "shared medication" with other prisoners. (¶ 75, PageID.13).

Plaintiff alleges that, on the morning of July 9, 2016, a severe storm knocked out IBC's power for about ten hours. Plaintiff alleges that he experienced an asthma attack stemming from the warmer than normal temperatures inside the prison. Plaintiff states that he described his symptoms to Corrections Officer Nixon while Nixon was making his rounds. According to plaintiff, Nixon responded that other prisoners were suffering under the same conditions and he declined to contact health services. (¶ 86, PageID.14). Later that morning, plaintiff was allowed to go to IBC's health services building where he received "albuterol breathing treatment." Plaintiff alleges that defendant Burch somehow "cut short" that treatment. (¶¶ 87-92, PageID.14-15). Plaintiff blames the purportedly shortened treatment for the deterioration of his condition on the evening of July 9, 2016. Corrections Officers escorted plaintiff to the health care services building. Plaintiff alleges that he was seen by defendants Taylor and Hall. Plaintiff was advised to "drink some water," but was not provided with any additional medication. (¶¶ 96-100, PageID.15-16).

Plaintiff alleges that Corizon Health, Incorporated is in the business of providing healthcare to MDOC inmates pursuant to a contract with the State of Michigan. Plaintiff claims that Corizon has a policy, custom or practice that allowed its employees to reduce plaintiff's access to "a rescue inhaler, Q-Var inhaler, albuterol

breathing treatments, and/or any other medications designed to treat [plaintiff's] COPD or asthma[]" and that such actions had been taken to maximize cost savings at the expense of plaintiff's health and safety.   (¶¶103-13, PageID.16-19).

Plaintiff's allegations against MDOC defendants Langdon, Deeren, Kinder, Gregurek, Buskirk, Harbaugh, and Russell do not stem from their roles in prescribing medications or providing health care, but rather, their roles in responding to plaintiff's grievances.   Defendants Langdon, Deeren, Kinder, Harbaugh, and Russell were involved in the process of responding to plaintiff's grievances and plaintiff asserts that, by doing so, they "approved of and upheld" Grahn's decision.   (¶¶ 44-47, PageID.9).   Defendants Gregurek, Buskirk, Harbaugh, Russell, and Kinder were involved in processing plaintiff's grievance against Nurse Practitioner Lindhout, and plaintiff alleges that by doing so they upheld and approved of Lindhout's decision. (¶¶ 72-74, PageID.13).

    C.   <u>Discussion</u>

       1.   State Law Claims

Although plaintiff attempted to plead around the requirements of Michigan's malpractice laws by labeling his claims as tort claims for negligence and "vicarious liability," his claims that he did not receive appropriate medical treatment "clearly sound[] in medical malpractice." *See Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *5 (W.D. Mich. Mar. 30, 2017).   "*[R]espondeat superior* is a theory of vicarious liability and not a separate cause of action." *Urbanec v. Multi-Financial Securities Corp.*, No. 10-12869, 2010 WL 4739441, at *8 (E.D. Mich. Nov. 16, 2010);

*see Arora v. Henry Ford Health Sys.*, No. 2:15-cv-13137, 2017 WL 4119946, at *6 (E.D. Mich. Sept. 18, 2017) (*Respondeat superior* is not an independent cause of action[.]").

Plaintiff's purported negligence and vicarious claims are "subject to the prerequisites imposed under Michigan law for the bringing of a malpractice claim, including that the complaint be accompanied by an affidavit of merit signed by a health professional attesting to defendant['s] failure to meet the standard of care. MICH. COMP. LAWS § 600.2912d(1).   Plaintiff has failed to provide such [an] affidavit ..., a failure that requires dismissal[.]"   *Hamer v. County of Kent*, No. 1:13-cv-504, 2013 WL 8479414, at *9 (W.D. Mich. Nov. 6, 2013); *see also Miller v. Westcomb*, No. 2:14-cv-45, 2016 WL 4136536, at *4 (W.D. Mich. Aug. 4, 2016).

Plaintiff did not plead facts sufficient to support a claim for Intentional Infliction of Emotional Distress against any defendant.   His disagreement with the course of medical treatment does not approach conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."   *Howard v. Calhoun County*, 148 F. Supp. 2d 883, 892 (W.D. Mich. May 10, 2001).   Mere deficiencies in medical care "do not rise to the level of extreme and outrageous conduct."   *Jones v. Muskegon County*, 625 F.3d 935, 948 (6th Cir. 2010).

In addition, there is no state law claim for damages against defendants based on alleged violations of Michigan's constitution.   *See Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423, 426-27 (2000); *see also Jones v. City of Oak Park*, No. 15-cv-12968,

2017 WL 3727111, at *8 (E.D. Mich. Aug. 30, 2017); *Umbarger v. Michigan*, No. 1:12-cv-603, 2013 WL 5538766, at *5 (W.D. Mich. Oct. 8, 2013) (collecting cases).

I recommend that the portions of Counts I, II, III, and IV seeking an award of damages based on alleged violation of Michigan's constitution be dismissed with prejudice for failure to state a claim upon which relief can be granted.   I recommend that Counts V (vicarious liability), VI (negligence), and VII (intentional infliction of emotional distress) be dismissed with prejudice under Rule 12(b)(6) as to all defendants pursuant to the statutory authority provided in 28 U.S.C. § 1915(e)(2) and 1915A.

### 2.   Eighth Amendment Claim Against Corizon Under Section 1983

It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of *respondeat superior* or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).   Corporations, whether public or private, cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.   *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.  . . .   Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence.").

I find that plaintiff has not alleged facts sufficient to hold Corizon liable for a failure to properly train and supervise its employees.   *See Rose v. Washington*,

No. 2:16-cv-242, 2017 WL 3765164, at *7 (W.D. Mich. Aug. 31, 2017); *Esch v. Kent*, No. 1:13-cv-478, 2016 WL 5387860, at *2-4 (W.D. Mich. Sept. 27, 2016).

A plaintiff that sues a private or public corporation for constitutional violations under Section 1983 must establish that a policy, practice, or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that, like a municipal corporation, a private corporation's "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). I find that plaintiff has alleged sufficient facts to withstand the corporate defendant's Rule 12(b)(6) motion to dismiss this claim.

## 3. Claims Stemming from the MDOC's Grievance Process

Plaintiff's allegations against MDOC defendants Langdon, Deeren, Kinder, Gregurek, Buskirk, Harbaugh, and Russell stemming from their involvement in the MDOC's grievance process fail to state a claim upon which relief can be granted. The denial of administrative grievances or the failure to act in response to a grievance does not subject supervisors to liability under Section 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("In order to establish supervisory liability pursuant to § 1983, the plaintiff must prove that the defendant was personally responsible for or actively participated in the alleged unconstitutional actions that caused his injury; the failure to act by

prison officials does not subject supervisors to liability under § 1983." (quotations and citations omitted)); *accord Karn v. Asche*, No.2:17-cv-10, 2017 WL 4053917, at *2 (W.D. Mich. Sept. 14, 2017) (complaint that defendants failed to conduct an investigation in response to the prisoner's grievance failed to state a claim).

## II.   MDOC Defendants' Motion for Summary Judgment

The MDOC defendants seek summary judgment on plaintiff's claims based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).   The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "   *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of

evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).   "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' "   *Dominguez v. Correctional Med. Servs.*, 555   F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).   The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.   "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant

-16-

on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."   *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).   The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056.   Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

    B.    <u>Failure to Exhaust Remedies Standards</u>

The MDOC defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.   A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.   42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state

-17-

administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical

-18-

procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.   548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules.   *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3]   In *Sullivan v. Kasajaru*, 316 F. App'x 469 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.   *Id.* at 470.

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process.   The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224.   An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement.   *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail

---

[3]A copy of the policy directive is found in the record.   *See* ECF No. 60-4, PageID.623-29.

to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

C.    Proposed Findings of Fact

The following facts are beyond genuine issue.   Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions.   He has filed numerous grievances and pursued numerous grievances through a Step III decision by the Grievance and Appeals Section.   Plaintiff did not file a grievance, however, against any of the MDOC defendants regarding his claims in this case before he filed this lawsuit.   (ECF No. 60-2, PageID.478-621).

Three of plaintiff's grievances relate to his instant claims, but they were directed against Corizon and its employees, not the MDOC defendants.

1.    Grievance No. RMI-15-10-2509-12D1

On October 30, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. RMI-15-10-2509-12D1. (ECF No. 60-3, PageID.600).   This was a grievance against Corizon and Nurse Practitioner Corey Grahn regarding how frequently he could obtain refills of an Albuterol inhaler.   (*Id.*). Joshua Langdon was the Step I respondent and Bryan Deeren was the reviewer of the Step I response.   Plaintiff's grievance was denied at Step I.   It noted that the medical provider (MP) has the authority to determine the appropriate medical

-20-

regiment and here determined that plaintiff did not require and Albuterol inhaler refills at the frequency plaintiff desired.   (ECF No. 60-3, PageID.601).

Plaintiff pursued a Step II grievance appeal.   On January 1, 2016, Laura Kinder, R.N., Clinical Administrative Assistant of the Southern Region Health Care Administration gave the Step II response to plaintiff's grievance.   She noted that the medical records dated after October 29, 2015, did not include any request by plaintiff for urgent care stemming from lack of access to more frequent refills of an Albuterol inhaler.   She noted that the medical provider (MP) was responsible for determining the most appropriate course of medical treatment.   Plaintiff's disagreement with the MP's medical judgment did not support a claim that his treatment was inappropriate. Plaintiff's grievance was denied at Step II.   (ECF No. 60-3, PageID.599).

Plaintiff pursued an appeal to Step III.   The Step III response was signed by R. Harbaugh, R.N. and Richard Russell Manager, Grievance Section of the Office of Legal Affairs.   The Step I and II responses were affirmed.   "The Medical Provider ordered the Albuterol with two refills in six months.   The Medical Provider is the medical authority and is responsible to manage the treatment plan of the patient. The grievant's allegations are not supported."   (*Id.* at PageID.597).   Plaintiff's grievance appeal was denied at Step III.   (*Id.*).

2. <u>Grievance No. IBC-16-03-0708-12D3</u>

On March 21, 2016, IBC's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-16-03-0708-12D3.   This was a grievance against "Corizon Health, Inc. [and] Dr. Andrea (female doctor)." (ECF No. 60-2,

PageID.534).   Plaintiff complained that on March 8, 2016, "Dr. Andrea" had canceled treatment that Dr. Johnson had ordered.   The Step I grievance response was reviewed by S. Buskirk, R.N., and the Step I respondent was S. Gregurek, R.N. Plaintiff's grievance was denied at Step I.   Plaintiff pursued an appeal to Step II. The Step II response was provided by Laura Kinder, R.N.   Kinder noted that plaintiff's medical provider was responsible for determining the most appropriate course of medical treatment and plaintiff's disagreement with the medical judgment of the MP did no support plaintiff's claim that the treatment plan was inappropriate. (*Id.* at PageID.533).

Plaintiff pursued an unsuccessful appeal to Step III of the MDOC's grievance process.   The Step I and II responses were appropriate and affirmed on appeal Plaintiff's disagreement with the treatment plan was not a denial of care.   The medical provider is the medical authority and is responsible for management of the patient's treatment plan.   The Step III decision is signed by R. Harbaugh, R.N and Richard Russell as the Manager of the Grievance Section of the Office of Legal Affairs.

3.  Grievance No. IBC-16-05-1135-12f

On May 13, 2016, IBC's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-16-05-1135'12f.   Plaintiff's grievance was against Dr. Andrea, Corizon, and IBC Health Services.   Plaintiff stated that on May 12, 2016, he had been told by some unidentified individual that all of his medication had been canceled on or about April 19, 2016.   Plaintiff claimed that his prescriptions had been canceled in "retaliation" for filing Case No. 1:16-cv-190 and to

save money.  (ECF No. 60-2, PageID.513).   Nurse Gregurek was the Step I respondent to plaintiff's grievance and Nurse Buskirk was the Step I reviewer.   The grievance response indicated the investigation of plaintiff's grievance included contacting his medical practitioner (MP).   Plaintiff had been evaluated by the MP on April 19, 2016, and the MP determined that inhalers were not medically indicated at that time.   The MP educated plaintiff on the proper use of inhalers and indicated that plaintiff should contact health case for evaluation if he experienced problems.  (*Id.* at PageID.514).   Plaintiff found the Step I response "unsatisfactory" and he pursued an Appeal to Step II of the MDOC's grievance process.   (*Id.* at PageID.511).

On June 24, 2016, Laura Kinder, RN, Clinical Administrative Assistant for the Southern Region Health Care Administration provided the Step II grievance response.   The response indicated that an investigation of the electronic health record showed that on April 19, 2016, plaintiff had received a medical provider appointment for asthma and that an interview and physical examination were conducted.   The assessment of plaintiff's asthma diagnosis was good and plan of medical care was developed.   A Qvar inhaler was discontinued and the number of Albuterol inhalers was decreased to one every six months.   Plaintiff's grievance was denied at Step II.   Plaintiff was being evaluated and treated by the medical provider (MP).   The MP was responsible for determining the most appropriate course of medical treatment and plaintiff's disagreement with the medical judgment of the MP did not support plaintiff's claim that the treatment plan was inappropriate.  (ECF No. 60-2, PageID.512).

-23-

Plaintiff pursued an appeal to Step III.   In August 2016, plaintiff's Step III appeal was denied.   The Step III grievance response was signed by R. Harbaugh, R.N. and Richard Russell, Manager of the Grievance Section of the MDOC's Office of Legal Affairs.   (ECF No. 60-2, PageID.510).

D.   Discussion

1   Eleventh Amendment Immunity

Plaintiff's claims for damages against the MDOC defendants in their official capacities are barred by Eleventh Amendment immunity.   The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.   *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court.   *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).   A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).   Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.   *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.   MDOC defendants are entitled to dismissal with prejudice of plaintiff's claim for monetary damages against these defendants in their official capacities.

-24-

2    Exhaustion

MDOC defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a), and they have carried their burden in that regard.   Exhaustion is mandatory.   *Woodford*, 548 U.S. at 85.   "[N]o unexhausted claim may be considered."   *Jones v. Bock*, 549 U.S. at 220.   I recommend that the MDOC defendants' motion for summary judgment (ECF No. 59) be granted.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Rule 12(b)(6) motion by the Corizon defendants (ECF No. 106) be granted in part and denied in part.   I recommend that the motion be denied only as to plaintiff's claim for damages under 42 U.S.C. § 1983 that defendant Corizon Health, Incorporated, through its policy, practice, or custom was deliberately indifferent to plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment rights.   I recommend that the Corizon defendants' motion be granted in all other respects.

I recommend that all plaintiff's claims for damages against the MDOC defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.   I recommend that all plaintiff's purported state-law claims for damages against the MDOC defendants in their individual capacities be dismissed with prejudice pursuant to the statutory authority provided 28 U.S.C. §§ 1915(e)(2) and 1915A.   I recommend that plaintiff's purported federal claims for damages against MDOC defendants Langdon, Deeren, Kinder,

-25-

Gregurek, Buskirk, Harbaugh, and Russell in their individual capacities be dismissed with prejudice pursuant to the statutory authority provided by 28 U.S.C. §§ 1915(e)(2) and 1915A. I recommend that the motion for summary judgment by the MDOC defendants (ECF No. 59) be granted and that all plaintiff's claims for damages against the MDOC defendants in their individual capacities be dismissed without prejudice (this being only an alternative form of relief on those claims against individuals where I have recommended dismissal with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A)).

If this report and recommendation is adopted in its entirety, the only remaining claims will be plaintiff's claims for damages against Nurse Practitioners Grahn and Lindhout under 42 U.S.C. § 1983 for alleged violation of plaintiff's Eighth Amendment rights stemming from the medications they prescribed during the period at issue for plaintiff's asthma and COPD and plaintiff's claim for damages against Corizon under 42 U.S.C. § 1983 for alleged violation of his Eight Amendment rights stemming from the corporate defendant's policy, practice, or procedure regarding the medications prescribed for plaintiff's asthma and COPD during the period at issue.

Dated:     November 10, 2017          /s/   Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a

waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).